UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

AUNDRAY JERMAINE ARCHER a/k/a JERMAINE
ARCHER                                                    COMPLAINT (Corrected)

                              v.                          Civil Action No. 25 Cv 08331

THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE DEPARTMENT, WENDELL
STRATFORD, NYPD DETECTIVE GALLO, NYPD DETECTIVE          JURY TRIAL DEMANDED
ROBERT CORTEZ AND JOHN DOES 1 THROUGH 5, BEING
MEMBERS OF THE NYC POLICE DEPARTMENT'
UNIDENTIFIED AND UNKNOWN TO PLAINTIFF AT THIS
TIME WHO PARTICIPATED IN FALSIFYING THE
CASE AGAINST HIM FOR WHICH HE WAS WRONGFULLY
CONVICTED

-----------------------------------------------------------------------------X

    Plaintiff Aundray Jermaine Archer, also known as Jermaine Archer, by and through his

attorney, Peter A. Cross, complaining of the defendants, states as follows:

INTRODUCTION

1.    Plaintiff Aundray Jermaine Archer, hereinafter at times referred to as "Archer,"

was wrongly convicted in 1999 of second-degree murder in connection with the shooting

death of Patrick Niles. He was sentenced to an indeterminate term of imprisonment of 22

years to life and served 22 years in maximum security prisons, for a murder he did not

commit and was not connected to in any way, until he was granted parole in 2020.

2.     This Court has federal question jurisdiction pursuant to 28 U.S.C Section 1331 over claims arising under 42 U.S.C. Section 1983 et seq.  This Court has supplemental jurisdiction over Archer's state law claims pursuant to 28 U.S.C. Sec. 1367(a).

3.     Archer's conviction was not the result of innocent or even negligent mistakes and was not accidental but the direct result of the conduct of members of New York City Police Department, named and as yet unnamed, who fabricated evidence and false witness testimony and provided the Kings County District Attorney with evidence against Archer that they knew was false.

4.     Archer, who always maintained his innocence of the charges against him, was released from imprisonment on parole on November 30, 2020.  In 2021 Archer filed a motion in New York State Supreme Court, Kings County, to have his conviction vacated on the grounds that the prosecution wrongfully withheld evidence that materially affected the testimony of Carlos Bethune, the prosecution's sole alleged eyewitness to the shooting.

5.     On July 18, 2024, following a lengthy hearing that included the testimony of the prosecuting attorney, Supreme Court Justice Craig S. Walker granted Archer's motion and vacated his conviction "pursuant to CPL Section 440.10(1)(h) and *Brady v. Maryland.*"  A copy of the Court's Decision and Order is attached hereto as Exhibit 1. The People have appealed the decision and the appeal is pending. Nevertheless, Archer files this Notice of Claim seeking damages from the City of New York for his wrongful conviction and incarceration for 22 years, followed by three years of parole supervision.

2

6.    This Court has federal question jurisdiction pursuant to 28 U.S.C Section 1331 over claims arising under 42 U.S.C. Section 1983.

7.    Supplemental jurisdiction over Archer's state law claims exists pursuant to 28 U.S.C. Section 13679 (a).

8.    Archer has complied with the requirements of New York General Municipal Law Section 50-1 by serving a notice of claim on City of New York Office of the Comptroller on October 8, 2024, within the time required by New York General Municipal Law Section 50-e. More than 30 days have elapsed since the service of that notice and no offer of settlement has been made.

9.    At the request of the Office of the Comptroller of the City of New York on August 31, 2025, Archer submitted to a hearing pursuant to New York General Municipal Law Section 50-h.

<u>VENUE</u>

10.    Pursuant to 28 U.S.C. 1391 (b) venue is proper in the Southern District of New York, the judicial district where The City of New York and The New York City Police Department reside and are subject to the Court's jurisdiction and where Plaintiff sustained substantial injuries from his incarceration and where her continues to sustain injuries.

.

<u>JURY DEMAND</u>

3

11.    Pursuant to the Seventh Amendment to the United States Constitution, Plaintiff demands a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

12.    Archer was at all times material to this Complaint a citizen and resident of the State of New York.  He is currently a citizen of the State of New York.

13.    Defendant City of New York (hereinafter "the City") is a political subdivision of the State of New York existing by virtue of the laws of the State of New York

14.    The Police Department of the City of New York (hereinafter "the NYPD") is an agency of the City of New York.

15.    Defendants Wendell Stratford (hereinafter "Defendant Stratford"), Gallo (first name unknown, hereinafter "Detective Gallo") and Robert Cortez (hereinafter "Detective Cortez") at all times relevant to this Complaint were  duly appointed and acting police officers of the NYPD with the rank of Detective acting under color of law and in their individual capacities within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City and the State of New York.

16.    Defendant "Doe" officers whose actual names the plaintiff has been unable to ascertain despite reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," represent those officers and detectives in the New York City Police Department acting under color of law and in their individual capacities within the

scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York, who participated in the investigation that led to Archer's wrongful conviction.

## NATURE OF THE ACTION

17.     This action arises under the Constitution and laws of the United States, particularly 42 U.S.C. 1983, 1985 and 1988 and <u>Brady v. Maryland</u> 373 U.S. 83 (1963) ("Brady") and the laws of the State of New York for the malicious prosecution of Jermaine Archer for the murder of Patrick Niles on July 21, 1997. As alleged herein despite the use of fabricated, perjured testimony and false statements to obtain the arrest, indictment, prosecution, conviction and incarceration of the plaintiff for a period of 22 years, it was known by the NYPD before Archer was wrongly prosecuted that the murder was in fact committed by another young male named Yasir Julio (hereinafter "Julio"). Several eyewitnesses identified Julio as the shooter and Julio later confessed to the shooting in a recorded conversation. Defendants instead focused all of their efforts at falsifying evidence against Archer, including arresting Archer's friend, Michael Cruz, for drug possession. Detectives then told Michael that unless he provided a statement implicating Archer in the murder of Patrick Niles, he would be sent to jail for the drugs. Michael signed a statement created and written by detectives and testified to that statement during grand jury proceedings. As a result of the misconduct of the defendants, Archer spent 22 years incarcerated and Julio remained free to commit additional crimes until he was shot and killed in the fall of 2015.

5

## THE FACTS

18.    On July 21, 1997, at approximately 11:30 P.M. Patrick Niles was shot and killed while a passenger being driven down Westminster Road, a Brooklyn residential street, by Carlos Bethune. Bethune was not injured.

19.    In his initial interview with the police Bethune informed them that he did not see the shooter.

20.    The night Patrick Niles was shot was a warm summer night and many of the young residents of Westminster Road were outside their apartments socializing with one another. Some young men were playing dice on the sidewalk. Some young women were chatting nearby.  Thus, when the shooting occurred there were several actual eyewitnesses who saw and could identify the actual shooter, Yasir Julio, a young man they knew from the neighborhood. Moreover, at the time the shooting occurred several witnesses observed Archer in a nearby alley where he had gone to relieve himself.  The police ignored all the bystanders present at the time AND focused instead on one young man who was not present, the Plaintiff.

21.    Archer had a reputation as a leader on the block, and he was familiar to the police officers on the beat. They stopped by regularly and patted him down along with other young men on the block. In fact, they had passed through minutes before the shooting, patted Archer and his friends down for weapons, and found nothing amiss.

22.     The victim of the shooting, Patrick Niles, was the brother of Reynaldo Niles. Reynaldo and Patrick lived on a different street in the same neighborhood and Reynoldo had a reputation for violence. He was feared by the young men on Westminster Road. Archer knew not to cross Reynaldo or his family and friends.  Nevertheless, Reynaldo came to believe that Archer shot his brother.  On August 12, 1997, Reynaldo approached Archer's brother Michael as he was entering the house where Michael lived and shot him multiple times. Though gravely wounded, Michael survived his injuries.

23.     Bethune was a close associate of Reynaldo.  He often served as his driver.  A few days after the shooting, the police brought Bethune in for further questioning.  This time after a lengthy session, Bethune gave the police the answer they wanted – that Archer was the shooter.  A warrant was issued for Archer's arrest.

24.     Fearful for his own life, Archer fled the city with his two young children and their pregnant mother whom he expected to marry.  Thus, when a warrant was issued for his arrest, Archer became a fugitive by necessity.

25.     On March 13,1998 Archer was arrested in Allentown, Pennsylvania.  Defendant Wendell Stratford was involved in the arrest and had several conversations with Archer in Pennsylvania and on the way back to New York. Stratford told Archer point blank that the NYPD knew he was not the killer, but unless he told them who did it, he was going to be prosecuted.  Archer told them that he did not witness the shooting because he was in the alley when he heard the gunshots but that others standing outside of the alley had seen it. Stratford insisted that if Archer did not say he saw Yasir Julio fire the gun,

Archer would be prosecuted for the murder of Patrick Niles. Archer refused and was ultimately charged and wrongfully convicted of the murder of Patrick Niles.

COUNT ONE

42 U.S.C. Sec.1983 4th and 14th Amendment Claims for Malicious Prosecution

26.     Plaintiff hereby incorporates paragraphs 1 through 25 as if fully set forth herein at length.

27.     Defendants, despite knowing that probable cause did not exist to arrest and prosecute Archer for the murder of Patrick Niles, acted with malice individually and in concert to cause Archer to be arrested, charged and prosecuted for that crime, thereby violating Archer's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

28.     Specifically, defendants intentionally withheld from and misrepresented to prosecutors and the grand jury exculpatory facts that vitiated probable cause against Archer, including but not limited to the fact that eyewitnesses to the crime identified Yasir Julio as the shooter and placed Archer in another location at the time. The defendants performed the above-described acts deliberately, with reckless disregard for or indifference to the truth and with malice.

29.     When the prosecution faced difficulty locating Carlos Bethune, the Defendants further conspired to have Michael Cruz provide false statements and grand jury testimony implicating Archer in a murder that they knew someone else had committed.

8

30.     In fact, Archer, as he has stated at all times, both preceding and after his arrest, and maintained throughout his wrongful incarceration, is innocent of the murder of Patrick Niles.

31.     On July 18,2024, Archer's conviction was vacated pursuant to CPL Section 440.10(1)(h) and *Brady v. Maryland.*

32.     Archer's cause of action for malicious prosecution was unavailable to him until July 18, 2024, upon the favorable termination of the criminal proceedings against him. Furthermore, the claim is tolled as defendants concealed from Archer — and still are concealing to this day — the facts vitiating probable cause to arrest and prosecute him.

33.     But for defendants' unlawful and malicious conduct Archer would not have been arrested and/or prosecuted and /or convicted for the murder of Patrick Niles.

34.     Defendants' actions depriving Archer of his liberty without probable cause were in violation of clearly established constitutional law and no reasonable police officer in 1999 would have believed that the defendants' actions were lawful.

35.     As a direct and proximate result of the defendants' actions, Archer was wrongly convicted and imprisoned for twenty-two years and suffered the other grievous and continuing injuries and damages as set forth below.

<u>COUNT TWO</u>

42 U.S.C. Sec.1983 14th Amendment Claims for Deprivation of
Liberty Without Due Process of Law and Denial of a
Fair Trial by Fabricating Evidence and Coercion

9

36.     Plaintiff hereby incorporates paragraphs I through 35 as if fully set forth herein at length and further alleges as follows.

37.     Defendants, acting individually and in concert, coerced Bethune to falsely identify Archer as Patrick Niles's killer depriving Archer of his clearly established constitutional right pursuant to the Fourteenth Amendment to a fair trial and due process of law.

38.     Specifically, defendants deliberately, with reckless disregard for the constitutional rights of Archer, fed facts to and manipulated Bethune to obtain fabricated statements from him and false identification of Archer in a line-up. In so doing, Defendants acted in a manner that shocks the conscience by falsely representing in police reports, in pretrial conversations with prosecutors, and during Archer's trial that the facts recounted by Bethune originated with the witness when in fact they had been fed to the witness or otherwise fabricated by the defendant police officers.

39.     Furthermore, the defendants, deliberately and with reckless disregard or indifference for the constitutional rights of Archer, failed to disclose to prosecutors their coercion and fabrications and attempted coercion and fabrications, including but not limited to witness statements and investigative misconduct on the part of the defendants and others. Had this evidence been properly documented and/or disclosed it would have tended to prove Archer's innocence, cast doubt on the entire police investigation of the murder of Patrick Niles, impeached the trial testimony of Bethune, and undermined confidence in the verdict against Archer. But for defendants' actions, Archer would not have been indicted for or convicted of the murder of Patrick Niles.

10

40.    Archer's causes of action for denial of his liberty without due process of law and for denial of his right to a fair trial were unavailable to him until July 18, 2024 upon the favorable termination of the criminal proceedings against him. Furthermore, these claims are tolled, as defendants concealed from Archer — and still are concealing to this day — the coercion of witnesses, fabrication of evidence, deliberate failure to investigate and other facts giving rise to these claims.

41.    Defendants' conduct violated Archer's clearly established constitutional right to a fair trial and not to be deprived of liberty without due process of law as guaranteed by the Fourteenth Amendment. No reasonable police officer in 1999 would have believed that the actions taken by the defendants in feeding facts to Bethune and manipulating in order to fabricate evidence were lawful. As a direct and proximate result of defendants' actions, Archer was wrongly convicted and imprisoned for twenty-two years and suffered the other grievous and continuing injuries and damages as set forth above.

COUNT THREE

42 U.S.C. Sec.1983 Claim for Failure to Intercede

42.    Plaintiff hereby incorporates paragraphs I through 41 as if fully set forth herein at length and further alleges as follows.

43.    By their conduct and under color of state law, defendants had opportunities to intercede on behalf of Archer to prevent his malicious prosecution, lack of a fair trial,

11

and deprivation of liberty without due process of law, but, due to their intentional

conduct and/or reckless or deliberate indifference, declined or refused to do so.

44.    Defendants' failures to intercede violated Archer's clearly established

constitutional rights to not be maliciously prosecuted, denied a fair trial and deprived of

liberty without due process of law as guaranteed by the Fourth and Fourteenth

Amendments. No reasonable police officer in 1999 would have believed that failing to

intercede to prevent defendants from feeding facts to, manipulating, bribing, rewarding,

coercing and threatening alleged witnesses to fabricate evidence and cause Archer to be

arrested and prosecuted without probable cause were lawful. As a direct and proximate

result of the defendants' failures to intercede, Archer was wrongly convicted and

imprisoned for twenty two years and suffered the other grievous and continuing injuries

and damages as set forth above.

COUNT FOUR

42 U.S.C. Sec.1983 and 14th Amendment Civil Rights Conspiracy Claim

45.    Plaintiff hereby incorporates paragraphs I through 44 as if fully set forth herein at

length and further alleges as follows.

46.    Defendant NYPD officers, acting within the scope of their employment and under

color of law, agreed among themselves and with other individuals not within the employ

of the New York Police Department or New York City to act in concert in order to

deprive Archer of his clearly established Fourth and Fourteenth Amendment rights to be

12

free from malicious prosecution, deprivations of liberty without due process of law, and a fair trial.

47.    In furtherance of the conspiracy each defendant engaged in and facilitated numerous overt acts, including, without limitation, the following:

A. Defendant NYPD officers and others procured, through coercion, intimidation, and feeding of facts, Bethune's false statements and trial testimony identifying Archer as the shooter of Patrick Niles despite the fact that they knew or should have known that Archer was not involved in the crime.

B. Defendants NYPD officers and others withheld Brady material from the prosecutors and from Archer. Such materials included the fact that residents of Westminster Road present when Patrick Niles was murdered identified a person other than Archer as the shooter and others placed Archer away from the scene of the crime when the shooting occurred.

C. Defendants NYPD officers had the opportunity to disclose and report the ongoing conspiracy and the opportunity to otherwise prevent the overt acts committed in furtherance of the conspiracy, but failed to do so, despite knowing that the acts were unlawful and would result in the wrongful prosecution, conviction and imprisonment of Archer.

48.    As a direct and proximate result of the defendants' conspiracy and actions in furtherance of that conspiracy, Archer was wrongly convicted and imprisoned for

twenty-two years and suffered the other grievous and continuing injuries and damages as
set forth above.

## COUNT FIVE

### State Law Malicious Prosecution Claim

49.    Plaintiff hereby incorporates paragraphs 1 through 48 as if fully set forth herein at
length and further alleges as follows.

50.    The defendants, despite knowing that probable cause did not exist to arrest, charge
and prosecute Archer for the murder of Patrick Niles, intentionally, recklessly and with
malice caused Archer to be arrested, charged, prosecuted and convicted for the murder of
Patrick Niles.

51.    The defendants intentionally withheld from, and misrepresented to, prosecutors
and the grand jury material exculpatory facts that further vitiated probable cause against
Archer including but not limited to the fact that the evidence implicating Archer was the
product of fabrication, and the manipulation and intimidation of Bethune and coercion, as
well as threats and manipulation of the alleged witnesses.

52.    The defendant NYPD officers and other police officers, agents and employees of
the City were aware of the false and inaccurate information, statements and testimony
obtained by them from Bethune. Nevertheless, they deliberately, unjustifiably, in bad
faith and for the purpose of obtaining the arrest and prosecution of plaintiff Archer for
the murder of Patrick Niles, withheld from the Kings County District Attorney's Office,

and therefore from the Grand Jury, the aforementioned material evidence favorable to plaintiff which they knew or should have known negated probable cause for the arrest, indictment and prosecution of plaintiff for the murder of Patrick Niles.

53.     The defendant NYPD officers and other police officers, agents and employees of the City had a duty to disclose such evidence to the D.A.'s office in connection with the investigation and prosecution of this case.

54.     By virtue of the foregoing, defendant NYPD officers and other police officers, agents and employees of the City knowingly, intentionally and/or recklessly caused the arrest and prosecution of Archer for the murder of Patrick Niles based upon false, misleading, incomplete and tainted evidence, for which there was no probable or just cause.

55.     Defendants intended by their actions to cause the arrest, prosecution and wrongful conviction of Archer for the murder of Patrick Niles.

56.     Defendants acted with actual malice in the obtaining and fabrication of false evidence against Archer and in the concealment from Archer and his counsel of evidence. Had the actual evidence been disclosed showing that Archer was not the shooter and not even present when the shots were fired at the car in which Patrick Niles was a passenger, Archer would not have been arrested, indicted, prosecuted and convicted.

57.    Archer's cause of action for malicious prosecution was unavailable to him until July 18, 2024, upon the favorable termination of the criminal proceedings against him.

58.    The Defendants' conduct directly and proximately caused Archer's wrongful conviction and twenty-two years of imprisonment, as well as the other grievous and continuing injuries and damages set forth above.

## COUNT SIX

State Law Respondent Superior Claim Against City of New York for Malicious Prosecution

59.    Plaintiff hereby incorporates paragraphs I through 58 as if fully set forth herein at length and further alleges as follows.

60.    At all times relevant to this complaint the individual defendants acted as agents of, and in the scope of their employment with, the City of New York. The conduct by which defendants committed the tort of malicious prosecution was undertaken while defendants were on duty, carrying out their routine investigative functions as New York Police Department detectives or officers, and engaging in such conduct as would have been reasonably expected by their employer.

61.    The City of New York is liable for its agents' state law tort of malicious prosecution under the doctrine of *respondeat superior*.

## COUNT SEVEN

State Law Claim for Intentional or Reckless
Infliction of Emotional Distress

62.    Plaintiff hereby incorporates paragraphs I through 61 as if fully set forth herein at
length and further alleges as follows.

63.    The conduct of defendants in deliberately causing or recklessly disregarding the
risk of causing the wrongful arrest, prosecution and incarceration of Archer was extreme
and outrageous and directly and proximately caused the grievous and continuing injuries
and damages set forth herein.

64.    Archer's cause of action for intentional or reckless infliction of emotional distress
by defendants was unavailable to him until July 18, 2024, upon the favorable termination
of the criminal proceedings against him. Furthermore, this claim is tolled as defendants
concealed from Archer — and still are concealing to this day — their conduct giving rise
to this cause of action.

## COUNT EIGHT

State Law Claim for Negligent Infliction of Emotional Distress

65.    Plaintiff hereby incorporates paragraphs I through 64 as if fully set forth herein at
length and further alleges as follows.

66.    The defendants negligently and grossly negligently, and in breach of their duties
owed to him to refrain from fabricating evidence, coercing witnesses, withholding
material exculpatory and impeachment evidence, and otherwise acting to deny him due

process of law, directly and proximately caused Archer, who was innocent, to be falsely

arrested, maliciously prosecuted, and wrongly imprisoned for twenty-two years.

Defendants' actions caused Archer to suffer physical harm, including physical ailments

resulting from the circumstances and duration of his wrongful incarceration, and to fear

for his physical safety throughout the period of his pretrial and post-conviction

incarceration.

67.    Due to Defendant's actions, Archer's relationship with his children and their

mother is fractured and non-existent due to his being take away, their mother having to

provide for three children on her own, and the children growing up without a father in

their lives.

68.    Archer's cause of action for negligent infliction of emotional distress by defendants

was unavailable to him until July 18,2024, upon the favorable termination of the criminal

proceedings against him. Furthermore, this claim is tolled as the defendants concealed

from Archer and still are concealing to this day — their conduct giving rise to this cause

of action.

<u>PLAINTIFF'S DAMAGES</u>

69.    The actions of the defendants deprived plaintiff of his civil rights under the First,

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

Constitution and the laws of New York.

70.     The unlawful, intentional, willful, deliberately indifferent, reckless and/or bad faith acts and omissions of the defendants caused Archer to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted and forced to serve nearly eighteen years in jail and prison for a crime he did not commit.

71.     The unlawful, intentional, willful, deliberately indifferent, reckless and/or bad-faith acts and omissions of the defendants caused Archer the following injuries and damages that continue to date and will continue into the future: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family relationships, including the loss of relations with his children; severe psychological damage; damage to business and property; loss of income; costs of defense; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and expression, for which he is entitled monetary relief.

72.     All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all the standards for imposition of punitive damages.

<u>JURY DEMAND</u>

73.    Pursuant to the Seventh Amendment of the United States Constitution, Archer requests a jury trial on all issues and claims set forth in this Complaint.

WHEREFORE, Archer prays as follows:

A.  That the Court award compensatory damages to him and against defendants, jointly and severally on each and every claim herein, in an amount to be determined at trial;

B.  That the Court award punitive damages to him and against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

C.  For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorney's fees pursuant to 42U.S.C. 1988 for all 42 U.S.C. 1983 claims;

D.  For trial by jury on all claims made in this Complaint; and

E.  For any and all other, further and different relief to which he may be entitled.

Dated: October 8,2025                          Respectfully submitted,

                                               PETER A. CROSS (PC 8492)
                                               485 MADISON AVE., FL 16
                                               New York, NY 10022
                                               646-476-1946
                                               peter@petercrosslaw.com